## **AFFIDAVIT**

I, Christopher M. Redies, being duly sworn, state under oath that:

1. I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and a Resident Agent in Charge ("RAC") assigned to the Springfield, Missouri, Field Office. I have been an ATF SA since July 2001, during which time I have participated in numerous narcotics and firearms investigations, and numerous searches and seizures related to narcotics and firearms. I have received specialized training on the subject of firearms and narcotics trafficking from the ATF. I have been the affiant for multiple Title III wiretap affidavits in which illegal drugs and firearms were focuses of the investigation. Prior to becoming an ATF SA, I worked as a police officer with the Kansas City, Missouri, Police Department beginning in 1998.

2. This Affidavit contains information necessary to support probable cause for this application. It is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during the investigation.

3. On February 18, 2021, Corporal Michael Brandt of the Henry County, Missouri, Sheriff's Office ("HCSO") received information that Ashley LILLY would be in Clinton, Missouri, dropping off Thomas **PITTS** at the Probation and Parole Office. Law enforcement had reason to believe LILLY may also be in possession of methamphetamine. Detective Kauffman performed surveillance and observed a white Ford F-150 truck drop off an individual matching **PITTS's** description. Surveillance of the truck showed that it was occupied by two females—one

driver and one passenger. The truck made its way to a business in Clinton, Henry County, Missouri, and the two females went inside. One of the females was believed to be LILLY.

4. Corporal Brandt entered the business and made contact with the female he believed to be LILLY. Initially LILLY ignored Corporal Brandt but, when directly confronted, stated that her name was "Dara McKnealy." Corporal Brandt asked LILLY to exit the store with him and she complied. Once outside, Corporal Brandt requested identification from LILLY, which she was unable to produce. Instead, LILLY provided a false name and date of birth. When asked if she had a credit or debit card bearing her name, LILLY stated that she did not. Meanwhile, HCSO Corporal Ethan Logan arrived at the scene with a portable fingerprint scanner and LILLY agreed to have her fingerprints scanned. The scanner confirmed LILLY's identity and she was placed under arrest on active warrants.

5. Corporal Brandt also spoke with the other female (driver) who left the Ford F-150 and entered the clothing store, identified as T.M. T.M. insisted she knew LILLY as "Dara" and would not provide consent to search the Ford F-150. A K9 unit ("Cesar") was deployed on the Ford F-150 and alerted to the odor of controlled substances within. A search of the vehicle was conducted, during which law enforcement discovered a purse containing financial transaction cards bearing LILLY's name. A further search of the purse yielded two plastic bags of suspected methamphetamine inside of a black sunglasses case. The contraband was seized and secured as evidence. The suspected methamphetamine field-tested positive and weighed a total of approximately 119 grams. Based upon my training and experience, I am aware that this quantity of methamphetamine is inconsistent with possession solely for personal use.

6. On February 22, 2021, ATF Task Force Officer ("TFO") Chase Jackson advised LILLY of her status as a target of an investigation. LILLY became distraught and expressed fear

of **PITTS**. Without prompting, LILLY informed TFO Jackson that "he" (in an apparent reference to **PITTS** in the context of the conversation) put the methamphetamine in her purse that was discovered by HCSO deputies on February 18, 2021.

7. On March 17, 2021, a federal grand jury seated in Kansas City, Missouri, returned an indictment charging LILLY with conspiracy to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846; distribution of five grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and possession with the intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The aforementioned charges were based, in part, on LILLY's conduct on February 18, 2021.

8. On October 6, 2021, a confidential informant ("CI") and an ATF undercover ("UC") SA went to 20630 Chmelir Road, Ionia, Pettis County, Missouri, with the intent to purchase methamphetamine from **PITTS**. Prior to the meeting with **PITTS**, CI was searched for money, weapons, and drugs, with negative results. CI was provided funds by ATF to purchase methamphetamine. UC also had funds to purchase methamphetamine.

9. Upon arrival at 20630 Chmelir Road, CI and UC met with **PITTS** inside his residence. CI requested to purchase methamphetamine from **PITTS**. **PITTS** exited the residence and went outside. After some time, **PITTS** came back inside 20630 Chmelir Road. After **PITTS** returned to the residence, CI purchased approximately 28.8 grams of suspected methamphetamine from **PITTS** for $700 provided by ATF. UC was present when the purchase occurred between CI and **PITTS**. UC observed **PITTS** remove the methamphetamine from one plastic bag and place it into a separate plastic baggie. UC estimated that, after **PITTS** removed the methamphetamine he sold to CI, there was at least an additional two ounces (approximately 56.7 grams) of

methamphetamine remaining in the original bag where **PITTS** obtained the methamphetamine. UC and CI left 20630 Chmelir Road. After leaving, CI provided the purchased methamphetamine to UC. CI was searched for money and additional drugs, with negative results. The suspected methamphetamine field tested positive for the presence of methamphetamine, and was found to weigh approximately 28.8 grams, including packaging.

10. On October 28, 2021, a CI and an ATF UC SA again went to 20630 Chmelir Road with the intent to purchase methamphetamine from **PITTS**. Prior to the meeting with **PITTS**, CI was searched for money, weapons, and drugs, with negative results. CI was provided funds by ATF to purchase methamphetamine. UC also had funds to purchase methamphetamine.

11. Upon arrival at 20630 Chmelir Road, CI and UC met with **PITTS** inside the residence. CI requested to purchase methamphetamine from **PITTS**. CI and UC purchased approximately 57.6 grams of suspected methamphetamine from **PITTS** for $900 in funds provided by ATF. UC was present when the purchase occurred with **PITTS**. UC observed **PITTS** remove the methamphetamine from a container with additional methamphetamine located inside it. UC estimated the additional methamphetamine inside the container to be approximately the size of a softball. UC and CI left 20630 Chmelir Road. After leaving, CI provided the purchased methamphetamine to UC. CI was searched for money and additional drugs, with negative results. The suspected methamphetamine field tested positive for the presence of methamphetamine, and was found to weigh approximately 57.6 grams, including packaging.

12. A debrief of CI was conducted after leaving 20630 Chmelir Road. CI said (s)he observed **PITTS** remove the methamphetamine from a safe. CI said (s)he observed two firearms inside the safe with the methamphetamine. CI described both firearms as being handguns. CI said

one handgun was gray and the other handgun was black. CI further stated (s)he observed a black handgun in the back of **PITTS's** waistband when he sold the methamphetamine to CI and UC.

13. The meeting on October 6, 2021, was audio recorded; video recording was attempted but unsuccessful due to equipment failure. The meeting on October 28, 2021, was audio and video recorded. The recordings were reviewed by UC and found to be consistent with the information provided herein.

14. Based upon my training and experience, and for the reasons expressed above, I believe that **PITTS** has committed the following criminal acts in violation of federal law: possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and distribution of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

FURTHER AFFIANT SAYETH NAUGHT.

CHRISTOPHER REDIES
Digitally signed by CHRISTOPHER REDIES
Date: 2021.11.12 13:11:28 -06'00'

Christopher M. Redies
Special Agent / Resident Agent in Charge
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means on this 15th day of November 2021.

By telephone at 11:27 am

HONORABLE W. BRIAN GADDY
United States Magistrate Judge
Western District of Missouri